# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

## STATE OF TENNESSEE v. GLENDA R. DOTSON

### Direct Appeal from the Criminal Court for Sullivan County
### Nos. S23,336 and S23,377 Lynn W. Brown, Judge

---

### No. E1999-02330-CCA-R3-CD - Decided June 21, 2000

---

On November 15,1988, the appellant, Glenda R. Dotson, pled guilty in the Sullivan County Criminal Court to two counts of appropriation of property by person having custody. Tenn. Code Ann. § 39-3-1118 (1982). On July 12, 1989, the trial court sentenced the appellant to five years incarceration in the Tennessee Department of Correction for each count and further ordered consecutive service of the appellant's sentences, resulting in an effective sentence of ten years incarceration. The trial court then placed the appellant on probation for the duration of her sentences on the condition that the appellant pay restitution in the amount of four hundred dollars ($400) each month. On April 22, 1999, the trial court revoked the appellant's probation due to the appellant's failure to pay restitution. The appellant now challenges the trial court's revocation of her probation. Following a review of the record and the parties' briefs, we affirm and modify the order of the trial court in case number S23,377, reverse the order of the trial court in case number S23,336, and dismiss that case, and remand case number S23,377 for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed and Modified in Part, Reversed and Dismissed in Part, Remanded in Part.**

OGLE, J., delivered the opinion of the court, in which WADE, P.J., and TIPTON, J., joined.

Nat H. Thomas and Larry Dillow, Kingsport, Tennessee, for the appellant, Glenda R. Dotson.

Paul G. Summers, Attorney General and Reporter, Clinton J. Morgan, Assistant Attorney General, and Teresa Murray Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Factual Background

Between 1982 and 1987, the appellant, Glenda R. Dotson, worked for Charlton R. DeVault as his secretary. During this time, she fraudulently appropriated funds amounting to fifty thousand dollars ($50,000). In 1988, the appellant was charged with forty-two counts of appropriation of property by person having custody. Tenn. Code Ann. § 39-3-1118 (1982). On November 15, 1988, the appellant pled guilty to two counts of appropriation of property by person

having custody, and the remaining counts were dismissed.[1]  On July 12, 1989, pursuant to the appellant's pleas of guilt, the trial court imposed consecutive, Range I sentences of five years incarceration in the Tennessee Department of Correction.  Although not entirely clear from the record, the trial court apparently granted the appellant equal periods of probation on the condition that the appellant pay restitution in the amount of four hundred dollars ($400) each month for the duration of each probationary period.

The record reflects that, on several occasions during her probation, the appellant accumulated arrearages of restitution payments and probation fees.  Thus, in 1991, the trial court issued a probation violation warrant on the basis of an affidavit by the appellant's probation officer that alleged the appellant's failure to pay restitution from May 1991 through October 1991.  The disposition of this warrant is unclear from the record before this court.  However, the appellant apparently remained on probation thereafter.  Subsequently, in 1993, the trial court again issued a probation violation warrant.  On this occasion, the affidavit by the appellant's probation officer alleged that the appellant had failed to pay probation fees.  The appellant paid the arrearage and thereby avoided the revocation of her probation.  However, in 1995, the trial court issued a summons to the appellant on the basis of yet another affidavit by the appellant's probation officer that alleged the appellant's failure to pay restitution since May 1994, resulting in a total, outstanding balance of $33,860.03.  Pursuant to the summons, the appellant appeared in the Sullivan County Circuit Court and explained to the court that she had fallen behind in her restitution payments due to temporary unemployment. She further asserted that, although she was currently employed, she could no longer make restitution payments in the amount of four hundred dollars ($400) each month.  Accordingly, the trial court reduced the requisite restitution payments to three hundred dollars ($300) per month and again allowed the appellant to remain on probation.

The trial court initiated the current proceedings on January 22, 1999, issuing a probation violation warrant pursuant to an affidavit completed by the appellant's probation officer, John Edens.  Mr. Edens alleged in his affidavit that the appellant was five restitution payments or $1,500 in arrears.  The trial court conducted a probation revocation hearing on April 22, 1999.

At the probation revocation hearing, Mr. Edens testified on behalf of the State that he has supervised the appellant's probation since September 1997, and the appellant's probation was scheduled to expire on July 11, 1999.  Mr. Edens additionally confirmed that, at the time of the execution of the probation violation warrant, the appellant was five restitution payments or $1,500 in arrears. Mr. Edens noted that, since her arrest, the appellant has paid the arrearage. He concluded that the appellant has otherwise complied with the terms of her probation.

The sixty-one year-old  appellant also testified at the probation revocation hearing. She admitted that she had failed to timely make five restitution payments but asserted that her failure was not wilful.  She explained that, in December 1996, she suffered a heart attack and a stroke, which left her disabled and unable to work and resulted in medical expenses.  The appellant also

_____

[1]The guilty pleas were entered in case number S23,336 and in case number S23,377.

testified that her daughter was killed in January 1997, resulting in funeral expenses of fifty dollars ($50) each month. According to the appellant, her current, personal income comprised Social Security disability benefits amounting to $592 per month. Moreover, the appellant submitted an affidavit to the court reflecting a combined household income of $2,144 per month and expenses (including restitution) amounting to $2,382 per month, resulting in a monthly household deficit of $283. Finally, the appellant admitted that, upon her arrest, she was able to post a cash bond in the amount of $1,500 in addition to paying her restitution arrearage.

After hearing all the evidence, the trial court revoked the appellant's probation and reinstated the appellant's consecutive, five-year periods of probation subject to the same conditions, including monthly restitution payments of three hundred dollars ($300). Additionally, the trial court ordered the appellant to serve twenty-one (21) days incarceration in the Sullivan County Jail. In revoking the appellant's probation, the trial court stated:

> . . . [the appellant] and her husband have an annual gross income of twenty-five thousand, seven hundred, twenty eight dollars ($25, 728) a year. There's no excuse for her to be five (5) months behind. It has been a problem in the past. She has been warned. I don't believe her when she says it was unintentional. She is not credible on that, particularly on this record with two (2) prior violations for not paying. Of course, one of them is not paying probation fees. But it is inconceivable to the court that she didn't know that she shouldn't pay. And it looks like she is making a lot of excuses. At this point, I think she needs to go to jail again, so, we get her attention. The State has proven by far more than a preponderance of the evidence that she has violated the conditions of her probation. . . . [I]t is clear, this is a very deliberate refusal to pay. She has chosen not to pay. She has been told. She's been warned. She's been asked. And now, she gets some consequences as a result.

## II. Analysis

The sole issue before this court is whether the trial court properly revoked the appellant's probation. A trial court may revoke a defendant's probation whenever it finds that the defendant has violated the conditions of probation. Tenn. Code Ann. §§ 40-35-310 (1997). In determining whether or not to order revocation, the trial judge need not find beyond a reasonable doubt that a violation has occurred. Rather, the existence of a violation need only be supported by a preponderance of the evidence. Tenn. Code Ann. § 40-35-311 (1998 Supp.). Upon a finding that a defendant has violated a condition of probation, a trial court has three options: (1) the trial court can order the defendant's incarceration; (2) the trial court can order the original probationary period to commence anew; or (3) the trial court can extend the remaining probationary period for a period not to exceed two years. State v. Hunter, 1 S.W.3d 643, 644, 648 (Tenn. 1999); Tenn. Code Ann. § 40-35-308(c) (1998 Supp.); Tenn. Code Ann. § 40-35-310; Tenn. Code Ann. § 40-35-311. On appeal, the record must demonstrate that the trial judge has not acted arbitrarily and has exercised conscientious judgment. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). In other words, this court will not reverse the judgment

of the trial court absent an abuse of discretion, reflected in the record by an absence of substantial evidence to support the trial judge's findings. Id.

When the basis for revocation of a probationary sentence is failure to pay restitution, a court may not revoke the sentence until determining the underlying reasons for the violation. State v. Dye, 715 S.W.2d 36, 39-41 (Tenn. 1986)(citing Bearden v. Georgia, 461 U.S. 660, 665-668, 672-674, 103 S.Ct. 2064, 2069-2070, 2073-2074 (1983)). If the violation is due to wilful refusal to pay or failure to make bona fide efforts to obtain the means to pay, then the trial court may revoke the probationary sentence and order the defendant's incarceration. Id. If the violation stems instead from the probationer's inability to pay, it may not form the basis for incarceration unless alternative measures other than incarceration are inadequate to meet the State's need for punishment and deterrence. Id.

We conclude that the record preponderates against the trial court's finding that the appellant's failure to pay restitution was wilful. Again, the record reflects that, in December 1996, the appellant was disabled due to a heart attack and a stroke. At that time, she also incurred additional expenses, both medical and otherwise. Moreover, in evaluating the appellant's ability to pay restitution, the trial court considered the appellant's combined household income rather than the appellant's personal income. Yet, the trial court failed to make any findings concerning the appellant's access to her husband's income. In any event, the affidavit submitted by the appellant at the probation revocation hearing reflects a current, monthly household deficit of $283. Finally, although the appellant was able to post a $1,500 cash bond upon her arrest in these proceedings in addition to paying her restitution arrearage, the trial court made no findings concerning the source of these funds and the record does not reflect the source of these funds.[2] In sum, the trial court could not order the appellant's confinement consistent with the principles announced in Dye, 715 S.W.2d at 39-41, and Bearden, 461 U.S. at 665-668, 672-674, 103 S.Ct. at 2069-2070, 2073-2074.

Moreover, as the State concedes, the trial court could not revoke and reinstate both of the appellant's five-year probationary periods. The record reflects that, in January 1999, one of the sentences had already expired, and the appellant had six months remaining of the second sentence. The trial court was without authority to revoke the expired probationary sentence and order service of the original probationary period. Hunter, 1 S.W.3d at 646; Tenn. Code Ann. § 40-35-310. Accordingly, the trial court could, at most, revoke the unexpired sentence and impose a five-year period of probation.

We conclude that reinstatement of the original five-year period of probation in case number S23,377 is adequate to meet the State's interests in punishing the appellant and deterring others from similar conduct. However, we note that, at the probation revocation hearing, Mr. Edens inquired concerning the total amount of restitution owed by the appellant as a condition of probation, noting the victim's confusion in this regard. In this case, the original judgments, entered on July 12,

_____

[2]The appellant did indicate at the probation revocation hearing that she has, on occasion, borrowed money from her mother and other individuals in order to make her restitution payments.

1989, require the payment of four hundred dollars ($400) each month in restitution, but do not state the total amount of restitution to be paid or over what period of time the restitution payments are to continue. Indeed, the judgments do not even reflect that the appellant was placed on probation. Moreover, the records of proceedings in the trial court that might resolve the confusion, including the transcript of the "probation hearing," the "probation report," and the order of the trial court setting forth the terms and conditions of the appellant's probation, are not included in the record before this court.[3] In any event, the trial court subsequently adjusted the appellant's payment schedule and presumably, therefore, the total amount of restitution owed by the appellant. Upon remand, the trial court should review the omitted records and, in its order revoking probation in case number S23,377, clarify as appropriate the total amount of restitution owed by the appellant

Finally, we do note that, as it currently stands, the record suggests that the appellant will be unable to pay three hundred ($300) per month in restitution. Indeed, the State acknowledges as much in its brief and further suggests that this court remand this case to the trial court for appropriate findings concerning the appellant's ability to pay. We simply refer both the State and the appellant to Tenn. Code Ann. § 40-35-304(f) (1997), which statutory provision sets forth the procedures for requesting the modification of any ordered restitution.

## III. Conclusion
For the foregoing reasons, we (1) affirm the trial court's revocation of probation in case number S23,377, and the court's reinstatement of the appellant's original, five-year probationary period; (2) amend the trial court's order in case number S23,377 to dispense with the appellant's incarceration; (3) reverse the trial court's order in case number S23,336, and dismiss the case; and (4) remand case number S23,377 to the trial court for clarification of the total amount of restitution owed by the appellant as a condition of probation.

---

[3]The minutes of the Sullivan County Circuit Court reflect that, at the time of the appellant's guilty pleas on November 15, 1988, the appellant was "referred to the Probation Department for Review," and a "probation hearing" was scheduled for February 28, 1989. Moreover, in a letter to the trial court, Mr. Edens referred to a "probation report," which allegedly reflected a total amount of fifty thousand dollars ($50,000) in restitution.